FOREMOST INSURANCE COMPANY v. JOHN RANDOLPH INGRAM, COMMISSIONER OF INSURANCE FOR THE STATE OF NORTH CAROLINA. (IN THE MATTER OF ESTABLISHING APPROPRIATE INSURANCE PREMIUM DISCOUNTS FOR ADEQUATE MOBILE HOME TIE-DOWNS; ORDER OF THE COMMISSIONER ENTERED OCTOBER 31, 1975)

No. 7610SC331

(Filed 6 October 1976)

1. **Insurance § 116— mobile home insurance — tie-down discount — conclusions not supported by findings**

   Findings of fact of the Commissioner of Insurance did not support the Commissioner's conclusions of law in an order allowing a tie-down credit of 10% of the total premium for each of the various types of mobile home insurance.

2. **Insurance § 116— mobile home insurance — tie-down discount — necessity for findings of fact**

   In enacting the statute which "authorized and directed" the Commissioner of Insurance to implement not less than a 10% discount on mobile home insurance premiums for proper mobile home tie-down, the General Assembly intended that the size of the discount be determined only after compliance with the procedures and standards contained in Article 13 of G.S. Chapter 58; therefore, the Commissioner must make findings of fact supported by substantial evidence in determining the amount of the discount. G.S. 58-131.3A.

3. **Insurance § 116— mobile home insurance — tie-down discount — applicability to windstorm portion of premium**

   The statute authorizing a discount of not less than 10% from the premium "otherwise applicable" for mobile home insurance when the mobile home is tied down in accordance with the North Carolina State Building Code standards or any other standard "approved by the Commissioner and which affords no less protection from windstorm damage," G.S. 58-131.3A, does not permit a discount of not less than 10% of the entire premium but permits a discount only as to the portion of the premium relating to windstorm losses.

   Judge VAUGHN dissenting.

APPEAL by petitioner, Foremost Insurance Company, from *Hall, Judge.* Judgment entered 11 February 1976. Heard in the Court of Appeals 1 September 1976.

On 12 August 1975, the Commissioner of Insurance, John Randolph Ingram (hereinafter called "Commissioner"), issued pursuant to G.S. 58-131.2 a "Notice of Public Hearing" to be held 16 September 1975 " . . . for the purpose of establishing appropriate insurance premium discounts for adequate mobile home tie-downs, pursuant to Chapter 670 of the 1975 Session Laws of North Carolina." This action was taken in response to House Bill 343, included in Chapter 670 of the 1975 Session Laws of North Carolina, which has been codified as G.S. 58-131.3A and provides as follows:

> "The Commissioner is authorized and directed to implement not less than a ten percent (10%) discount from the insurance premium otherwise applicable to be allowed in diminution of the premium charged insureds under mobile-home owner policies and mobile-homeowner's policies where the mobile home covered by the policy has been properly secured in accordance with regulations of the North Carolina State Building Code Council as approved by the Commissioner or any other standard which is approved by the Commissioner and which affords no less protection from windstorm damage than the aforesaid regulations."

On 10 September 1975, in response to the Commissioner's notice, the North Carolina Fire Insurance Rating Bureau (hereinafter called "Rating Bureau") filed with the Commissioner revisions in the rules for tie-down credit for each of the various types of mobile home insurance policies. In each revision, the Rating Bureau recommended a reduction of 10% of the total premium and stated:

> "At present credible experience is not available to substanstiate any credit for tie-downs under this Program. Furthermore, it should be noted that the proposed credit of 10% is to be applied to the applicable basic premiums for coverages which encompass many other exposures . . . other than wind. Therefore, we strongly feel that the proposed tie-down credit is fully adequate under present circumstances."

On 16 September 1975, hearing was held pursuant to the Commissioner's notice. Three witnesses were heard. The first

was Kern E. Church, Deputy Commissioner of Insurance in charge of the Engineering & Building Codes Division, who testified regarding the North Carolina State Building Code Council's regulations of mobile home tie-downs to prevent wind loss. Mr. Church explained how tie-downs might operate in various areas of the State to reduce damage to mobile homes caused by windstorms. On cross-examination, Mr. Church stated that he would not be qualified " . . . to speak on any relation between tie-down and personal liability risks or theft of personal property risks, or basic fire risks, primarily aimed at wind as say (sic) would be related from insurance standpoint."

The second witness at the hearing was Charles B. Aycock, Manager of the North Carolina Fire Insurance Rating Bureau. He testified, inter alia, that the North Carolina Fire Insurance Rating Bureau has the authority to exercise responsibilities over the mobile home program; that in response to the Commissioner's Notice of Hearing, the executive committee of the Rating Bureau authorized a credit on the premiums payable on mobile homes in the amount of ten percent (10%); that this credit would extend across the board to the entire premium and would apply to risks other than those which were wind-related; that the executive committee assumed that the statute directed a credit to only the wind-related risks, but such a credit was not possible because the Rating Bureau did not have sufficient data to segregate the portion of the total premium which was related to wind losses; and that the Rating Bureau would have attempted to relate the discount to the wind-related losses, if the necessary statistical data had been available.

The final witness was Gerald W. Bell, Assistant Vice President of Foremost Insurance Company (hereinafter called "Foremost"), petitioner herein, and Manager of its State Filings Department. After being qualified as an expert, Bell gave extensive testimony regarding petitioner's statistical data and loss experience in North Carolina for the years 1971 through 1974. He stated, inter alia, that Foremost had totalled the amount of losses to mobile homes under its comprehensive insurance coverage and divided the sum into component parts according to the cause of the loss, i.e., fire, theft, flood, wind, etc.; that 13.5% of the total losses were wind-related; that tie-downs would not eliminate the entire amount of wind-related losses; that tie-downs would reduce wind-related losses by only 27.7%; that the estimated savings resulting from tie-downs

would justify a premium credit of four dollars for a comprehensive policy on the mobile home, with an additional credit of one dollar for the personal effects portion of the coverage.

On 31 October 1975, the Commissioner issued an order which stated:

### "FINDINGS OF FACT

1. That subsequent to notice of hearing the North Carolina Fire Insurance Rating Bureau made three filings for a revision in the rules for tie-down credit of 10% in each of the filings.

2. That the North Carolina Fire Insurance Rating Bureau waived notice of hearing on their filings and agreed to proceed under a combined hearing.

3. That Foremost Insurance Company appeared and offered evidence at the hearing in response to the original notice of the Commissioner.

4. That Foremost Insurance Company did not object to the merger of the hearings of the issue set forth in the notice of hearing and the hearing on the filings made by the North Carolina Fire Insurance Rating Bureau.

5. That seventeen out of forty-seven insurance companies writing mobile home policies are allowing a mobile home tie-down credit at this time.

6. That no credible statistics were introduced for all companies writing mobile home coverages that would demonstrate that the credits allowed in the North Carolina Fire Insurance Rating Bureau filings were unwarranted, unreasonable, improper or unfairly discriminatory.

7. That the Commissiner of Insurance has promulgated a regulation for mobile homes which includes the standard for mobile home tie-downs (USAS A119.1, 1969 edition).

8. That the premium or rate charged for the peril of wind damage is indivisible, in that the peril is included with other perils in these policies and the permium or rate for windstorm cannot be separately obtained.

CONCLUSIONS OF LAW

1. The revisions of the rules for tie-down credit of 10% in each of the filings made by the North Carolina Fire Insurance Rating Bureau are warranted, reasonable, proper and are not unfairly discriminatory.

2. The 1975 Session of the General Assembly of North Carolina authorized and directed the Commissioner of Insurance to implement not less than a ten percent (10%) discount from the insurance premium otherwise applicable to be allowed in diminution of the premium charged insureds under Mobile Home Owner Policies and Mobile-Homeowner's Policies where the mobile home covered by the policy has been properly secured in accordance with regulations of the North Carolina State Building Code Council as approved by the Commissioner and which affords no less protection from windstorm damage than the aforesaid regulations.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. That the revision in the rules for tie-down credit of ten percent (10%) requested in the above filings are approved effective November 1, 1975."

On 1 December 1975, Foremost filed a Petition for Review pursuant to G.S. 58-9.3 in the Superior Court of Wake County, requesting judicial review of the order of the Commissioner. This petition was heard before Hall, Judge, who on 11 February 1976 entered a judgment which stated:

"That although the Respondent's findings of fact, do not support the Respondent's conclusions of law, the Order of Respondent, dated October 31, 1975, and approving the revision in the rules for tie-down credit of ten percent (10%) as requested in the filings of the N. C. Fire Insurance Rating Bureau, is hereby affirmed in accordance with the provisions of NCGS Sec 58-131.3A which directs the Respondent, Commissioner of Insurance, to implement the ten percent (10%) tie-down credit referred to in the Order of October 31, 1975."

From this judgment, petitioner appealed.

*Attorney General Edmisten, by Associate Attorney James M. Wallace, Jr., for the Commissioner of Insurance, respondent appellee.*

*Bode & Bode, P.A., by Robert V. Bode, for petitioner appellant.*

MORRIS, Judge.

Petitioner contends that the trial court erred in affirming the Commissioner's order after determining that the order's findings of fact do not support its conclusions of law. We are constrained to agree.

G.S. 58-131.3A, which is the basis for this action, is codified in Chapter 58 of the General Statutes under Article 13, entitled "Fire Insurance Rating Bureau." The provisions of Article 13, which encompasses G.S. 58-125 through G.S. 58-131.9, are appropriate in determining the standards applicable to the order of the Commissioner. G.S. 58-126 states that:

> "The provisions of this Article shall apply to insurance against loss to property located in this State, or to any valuable interest therein, by fire, lightning, *windstorm,* explosion, theft of or physical damage to motor vehicles, *and all other kinds of insurance which fire insurance companies are authorized to write in this State. . . . "* (Emphasis supplied.)

G.S. 58-131.5 sets out the necessity for notice and a hearing before the Commissioner makes any rule, regulation or order under Article 13. G.S. 58-131.8 provides that any review of any order made by the Commissioner in accordance with the provisions of Article 13 shall be to the Superior Court of Wake County pursuant to G.S. 58-9.3, which states in pertinent part:

> "(a) Any order or decision made, issued or executed by the Commissioner . . . shall be subject to review in the Superior Court of Wake County on petition by any person aggrieved . . .
>
> (b) The Commissioner shall within 30 days . . . prepare and file with the Clerk of the Superior Court of Wake County a complete transcript of the record of the hearing, if any, had before him, and a true copy of the order or decision duly certified. The order or decision of the Com-

Insurance Co. v. Ingram, Comr. of Insurance

missioner *if supported by substantial evidence* shall be presumed to be correct and proper." (Emphasis supplied.)

In *In re Filing by Automobile Rate Office,* 278 N.C. 302, 180 S.E. 2d 155 (1971), Lake, J., in a dissenting opinion, summarized the procedure set forth in G.S. 58-9.3.

"The reviewing court is charged by G.S. 58-9.3(b) with the duty of reviewing findings of fact made by the Commissioner. . . . The statute states that the order of the Commissioner 'if supported by substantial evidence' shall be presumed to be correct. Obviously, the statute contemplates that *the reviewing Court is to determine whether there is substantial evidence in the record to support the Commissioner's findings of fact which are essential to his ultimate finding* that the rates are excessive or inadequate, reasonable or unreasonable." (Emphasis supplied.) 278 N.C., at 323-24, 180 S.E. 2d at 169.

Thus, it is incumbent upon the Commissioner to support any order pursuant to Article 13 by substantial evidence found in the record of the hearing. If the order does not meet the substantial evidence test, it will not withstand judicial review. *State ex rel. Commissioner of Insurance v. Automobile Rate Administrative Office,* 287 N.C. 192, 214 S.E. 2d 98 (1975); *State ex rel. Commissioner of Insurance v. Automobile Rate Administrative Office,* 24 N.C. App. 223, 210 S.E. 2d 441 (1974), cert. denied, 286 N.C. 412, 211 S.E. 2d 801 (1975).

[1]   We have examined the essential findings of fact in the Commissioner's order of 31 October 1975 and conclude that they are not supported by substantial evidence and do not support the conclusions of law. Findings 1, 2, 3, 4 and 7 list general facts and do not purport to substantiate the conclusions of law. Finding of fact 5, which states that a minority of insurance companies in North Carolina presently allow mobile home tie-down credits, provides no basis for setting such a credit. Finding of fact 6, in effect, shifts the burden of proof from the Rating Bureau to petitioner. This clearly is not the law. The Rating Bureau is the movant in a proceeding such as this and the burden is upon it to establish that the proposed rate is fair and reasonable. *In re Filing by Fire Ins. Rating Bureau,* 275 N.C. 15, 165 S.E. 2d 207 (1969). Finding of fact 8, which declares that the portion of the premium charged for windstorm damage is indivisible and cannot be separately obtained, is con-

trary to the evidence presented at the hearing. The testimony given on this point by petitioner was to the effect that windstorm losses could be and in fact were segregated from other losses by petitioner. Therefore, we agree with the judgment of the Superior Court that the respondent's findings of fact do not support its conclusions of law.

[2] Yet respondent contends that no findings of fact were necessary because G.S. 58-131.3A "authorized and *directed*" the Commissioner to implement a discount and that this "direction" constitutes a legislative determination which petitioner may not challenge. We disagree. While the language of the statute directs the implementation of *some* discount of not less than ten percent, the precise amount of the discount was not set forth. We believe the General Assembly intended that the size of the discount be determined only after compliance with the procedures and standards contained in Article 13 of Chapter 58. G.S. 58-126. Therefore, the substantial evidence requirement of G.S. 58-9.3 must be met, regardless of the amount of the discount determined by the Commissioner. Since this requirement was not complied with, the order of the Commissioner cannot stand.

[3] A final question is presented with regard to construction of G.S. 58-131.3A, which authorizes a discount of not less than ten percent from the insurance premium *"otherwise applicable"* when the mobile home is tied down in accordance with the North Carolina State Building Code standards or any other standard "approved by the Commissioner *and which affords no less protection from windstorm damage.*" Petitioner contends that this language permits a reduction in only that part of the premium associated with windstorm losses. Respondent, on the other hand, argues that the statute authorizes a discount of not less than ten percent of the entire premium rather than just the windstorm-related portion. We agree with the petitioner's construction of the statute and hold that G.S. 58-131.3A is concerned solely with discounts as to wind-related losses.

It is a tenet of the insurance industry that mobile home premiums are set by examining past losses and thereby projecting future expenditures. These losses are caused by many factors, including fire, theft, flood, and wind. Obviously, tie-downs cannot eliminate losses from all such causes, and, according to testimony given at the hearing, they do not prevent the

majority of damage caused by wind. G.S. 58-131.3A specifically addresses itself to "windstorm damage" and discounts from premiums "otherwise applicable." No discount is authorized for other precautions, such as fireproofing or waterproofing, and no other cause of damage is mentioned in the statute. The clear purpose of the statute is to prevent windstorm damage by giving an incentive to those owners who anchor their mobile homes. Accordingly, we believe the legislature intended a discount only as to the portion of the premium relating to the windstorm losses. This interpretation of the statute is reinforced by the fact that the Commissioner is authorized to order a discount of *any* amount so long as it is "not less than ten percent." Certainly the legislature did not intend to give the Commissioner the power to discount what could be a substantial percentage of the *entire* premium based on what would otherwise be a relatively small windstorm savings to the industry. We also take note of the fact that Mr. Aycock testified that the Rating Bureau's executive committee assumed that the statute directed a credit to the premium charged for wind-related risks and that the Bureau recommended a discount of the entire premium only because it was without sufficient data to divide the premium into its component parts. Foremost's evidence at the hearing spoke directly to the problem of segregating the windstorm losses, and no contradictory evidence was introduced. Therefore, we believe, and so hold, that the Commissioner should have incorporated this into his order and that the discount should relate only to the portion of the premium related to windstorm damage.

The judgment of the court is reversed and the order of the Commissioner is vacated.

Judge CLARK concurs.

Judge VAUGHN dissents.

Judge VAUGHN dissenting:

In my view the legislature, by the statute in question, has directed the Commissioner to allow a ten percent discount from "the insurance premium otherwise applicable" if the policy is written on a mobile home that is secured in the required manner. His order allowing the ten percent discount was purely

ministerial because the legislature has set that as the minimum discount. A hearing is required only if he allows a discount of more than ten percent. The legislature has said that the ten percent discount will be from the "insurance premium otherwise applicable," not from some combination of loss factors that may be a part of the basis for the "insurance premium" or cost of the "policy" to the insured. The statute, if it is to be rewritten, should be rewritten by the body that enacted it. The legislature could have had many reasons for enacting the statute other than a simple recognition of the potential for diminished damages by windstorms to a particular insured.